**STATE OF LA., ex rel. William J. GUSTE, Jr.**

v.

**C. William VERITY, Jr., Secretary, United States Department of Commerce, the Environmental Defense Fund, the Center for Environmental Education, Concerned Shrimpers of Louisiana (Intervenors).**

**Civ. A. No. 87–4948.**

United States District Court, E.D. Louisiana.

Feb. 29, 1988.

Elizabeth R. Megginson, Trial Atty., Asst. Atty. Gen., Baton Rouge, La., for plaintiff.

Donald A. Carr, James C. Kilbourne, Michele Kuruc, Trial Atty., Dept. of Justice, Land & Natural Resources Div., Washington, D.C., John Volz, U.S. Atty., S. Mark Gallinghouse, Asst. U.S. Atty., New Orleans, La., for William C. Verity; Karen Antrim, National Oceanic & Atmospheric Admin., St. Petersburg, Fla., of counsel.

Hogan & Hartson, David J. Hayes, Trial Atty., Mary Anne Mason, Barbara E. Pace, Washington, D.C., Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Gerald E. Meunier, New Orleans, La., for defendant-intervenors.

## ORDER AND REASONS

PATRICK E. CARR, District Judge.

The motions of plaintiff, State of Louisiana, ex rel. William J. Guste, Jr., Defendant, C. William Verity, Jr., and Intervenors, The Environmental Defense Fund, and The Center for Environmental Education for summary judgment were heard on February 10, 1988. After considering the motions, memoranda of the parties, the record and the law applicable to this case, the Court hereby renders its Order and Reasons.

This action is brought by the State of Louisiana, ex rel. William J. Guste, Jr., Attorney General, on behalf of the people of Louisiana and the Louisiana Department of Wildlife & Fisheries against William C. Verity, Jr., the United States Secretary of Commerce, seeking judicial review of regulations promulgated by the Secretary through the National Marine Fisheries Service (NMFS) concerning the shrimp trawling requirements, and the use of the turtle exclusion device (TED). The plaintiff moves the court to declare that those regulations are invalid and to issue a preliminary and permanent injunction enjoining the defendant from enforcing the regulations. The Concerned Shrimpers of Louisiana, Inc. have intervened asserting the same claims as the plaintiff. The defendant joined by intervenors, The Environmental Defense Fund and The Center for Environmental Protection, have moved to have the court to dismiss plaintiff's suit with prejudice, asserting that the regulations are valid.

On June 29, 1987, the defendant issued final regulations requiring shrimp trawlers in the Gulf and Atlantic to reduce the incidental catch and mortality of sea turtles in shrimp trawls. The rules for Louisiana become effective on March 1, 1988. The regulations require all Gulf shrimpers to use a TED if the shrimp trawler is trawling in offshore waters and the trawler is 25 feet or longer. If the trawler is less than 25 feet or trawling in inshore waters, the trawler will have to limit total trawling times to 90 minutes or less or in the alternative use a TED.

The plaintiff claims the regulations are arbitrary, capricious and an abuse of discretion. The plaintiff argues that the regulations place the entire burden of saving sea turtles on the backs of one "identifiable and powerless group" which violates their equal protection and due process rights. These claims are based on four (4) assertions made by the plaintiff: (1) that the TED has not been sufficiently tested in Louisiana waters; (2) that there is insufficient data to prove the turtles come into Louisiana waters in sufficient numbers to justify the imposition of these regulations; (3) that shrimpers are not the cause of turtle mortality; and (4) that the public was not given adequate notice and opportunity for meaningful participation in the promulgation of the regulations.

## I. *Standing:*

■ In plaintiff's complaint at 3.1 the State of Louisiana states that it brings this action in its sovereign capacity. The State of Louisiana has an interest in both the protection and development of its coastal waters and marine resources. The general rule is:

> "that a state may not attempt as *parens patriae* to enforce rights of its citizens in respect of their relations with the Federal Government. In that field it is the United States, and not the State, which represents them as *parens patriae* when such representation becomes appropriate, and to the former, and not to the latter, they must look for such protective measures as flow from that status." *Massachusetts v. Mellon*, 262 U.S. 447, 485-86, 43 S.Ct. 597, 600, 67 L.Ed. 1078 (1923).

See also, *Jones, Governor, ex rel. Louisiana v. Bowles, Price, Administrator*, 322 U.S. 707, 64 S.Ct. 1043, 88 L.Ed. 1551 (1944); *Pennsylvania v. Porter*, 659 F.2d 306 (3d Cir.1981). Neither may the State of Louisiana bring against the United States claims that the State's due process or equal protection rights have been violated. The state has no such rights. *Pennsylvania*, supra; *South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966).

■ However, the State of Louisiana has standing to sue in the quasi-sovereign capacity because of its interest in and ownership of its marine resources. *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948). In *McCready v. Virginia*, 94 U.S. 391, 24 L.Ed. 248 (1876) the court stated:

> "The principle has long been settled in this court, that each State owns the beds of all tide-waters within its jurisdiction, unless they have been granted away. In like manner, the States own the tide-waters themselves, and the fish in them, so far as they are capable of ownership while running. For this purpose the State represents its people, and the ownership is that of the people in their united sovereignty." Id. at 394 (citations omitted).

*Toomer*, supra reaffirmed this principle. See also, *State of Louisiana v. Baldridge*, 538 F.Supp. 625 (E.D.La.1982).

■ The State also brings this action as *parens patriae* on behalf of its citizens, the Louisiana Shrimpers. Section 5.3 of the plaintiff's complaint asserts that the Louisiana Shrimpers' equal protection and due process rights have been violated. The State does not have standing to represent interests of a distinct group of people (the Louisiana Shrimpers) who are capable of raising their own claims. See *Massachusetts v. Mellon*, supra. In addition, since the filing of these motions for summary judgment the Concerned Shrimpers of Louisiana, Inc. have intervened on their own behalf. Accordingly, any claim made by the State on behalf of the Louisiana Shrimpers is dismissed.

■ In plaintiff's complaint at 5.2 the plaintiff claims that the Secretary did not comply with Executive Order 12291 (5 U.S. C. § 601 note) which requires an agency to develop a Regulatory Impact Analysis. However, plaintiff's motion for summary judgment omits any reference to this claim.

The E.O. # 12291 (5 U.S.C. § 601 note) in Sec. 9 entitled Judicial Review states:

> Sec. 9. Judicial Review. This Order is intended only to improve the internal management of the Federal government,

and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers or any person. The determinations made by agencies under Section 4 of this Order, and any Regulatory Impact analyses for any rule, shall be made part of the whole record of agency action in connection with the rule.

Courts have held that the order provides no basis for judicial review. *State of Michigan v. Thomas*, 805 F.2d 176, 187 (6th Cir.1986). Given the above unequivocal and clear language of the order, this Court may not review the agency's compliance with this order.

## II. *Standard of Review:*

■ Regulations promulgated under the authority of the Endangered Species Act (ESA)[1] are reviewed under the standards of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). Such regulations may be overturned where the regulations are found to be:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law.

The substantial evidence standard is not applicable under the ESA. 16 U.S.C. § 1531–1543; 5 U.S.C. § 706(2)(E); *Ethyl*

*Corp. v. Environmental Protection Agency*, 541 F.2d 1, 37 n. 79 (D.C.Cir.1976).[2]

■ The Secretary has broad discretion in promulgating regulations to implement its duties under the ESA. A reviewing court is to be particularly defferential where an agency has been delegated discretion to reach decisions based on technical and scientific data. *Buttrey v. United States*, 690 F.2d 1170, (5th Cir.1982); *Avoyelles Sportman's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir.1983).

"Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Motor Vehicle Maufacturers Association v. State Farm Mutual*, 463 U.S. 29, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

Under 5 U.S.C. § 706, the court must "review the whole record or those parts cited of it by a party."

"It is well settled that judicial review of agency action is normally confined to the full administrative record before the agency at the time the decision was made. The focal point for judicial review should be administrative record already in existence, not some new record completed initially in the reviewing court. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). In

1. The Endangered Species Act, 16 U.S.C. § 1531 et seq. provides as follows:

The Secretary of Commerce, the Secretary of the Treasury and the Secretary of the Department in which the Coast Guard is operating are authorized to promulgate regulations as may be appropriate to enforce this Act and charge reasonable fees for expenses to the Government connected with permits or certificates authorized by this Act including processing applications and reasonable inspections and with the transfer, board, handling, or storage of fish or wildlife or plants and evidentiary items seized and forfeited under this Act.

2. The court in *Ethyl Corp.* noted that:

"The primary difference between the two [standards] in such cases would seem to be that 'substantial evidence' review is limited to evidence developed in formal hearings, while 'arbitrary and capricious' review of an agency engaged in informal rule-making is not so limited, but rather may consider the agency's developed expertise and any evidence referenced by the agency or otherwise placed in the record."

The Secretary is directed pursuant to the E.S.A. to promulgate regulations. *Supra*, n. 1. Thus, the informal rule-making standard of review is the applicable standard.

addition, *de novo* review is only allowed under this rule in two limited instances: where the agency action is adjudicatory in nature and the fact finding procedures are inadequate; or where issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action. *Camp v. Pitts, supra."*

*Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275 (D.C.Cir.1981); *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1972).

### III. *Basis for the Regulations:*

■ The agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207 (1962). The plaintiff contends that the regulations are arbitrary and capricious, are not supported by valid scientific data and the regulations are without a rational basis. The plaintiff also asserts that the regulations are overly broad. The plaintiff asserts that the record is insufficient in the following areas: (1) the presence of sea turtles in Louisiana waters; (2) impact of shrimp trawlers on sea turtle mortality; (3) TED testing in Louisiana waters; (4) effect of TEDS on Louisiana's economy; (5) shrimping activities in inshore waters and capture of turtles. The crux of plaintiff's complaint is that the Secretary failed to consider the best scientific data available before issuing its regulations.

A review of the administrative record demonstrates that the plaintiff's agru-

ments are unfounded in most aspects. From the outset, the Secretary through the National Marine Fisheries Service (NMFS) collected scientific information from sea turtle experts from states, universities and the private sector. *See* A.R.Vol. 1 M33 (Denver Wildlife Research Center); M 34 (Miami Laboratories), M59.4 (University of Florida Audubon Society), Vol. 3, M59–31 (Louisiana State University) Vol. 4, E7–9 (Fuller report—LSU); E–9 (National Marine Fisheries Services, Ms.) and numerous others. The administrative record includes 12 volumes of scientific studies, data, reports and extrapolations of data concerning all aspects of sea turtles and use of TEDS.[3]

The only area in which there is little information is with data regarding inshore waters. This is admitted by the defendant.[4] Because of the lack of data on inshore waters the Secretary, in the promulgation of the final regulations, stated that TEDS will not be required on inshore waters.[5]

In addition to compiling all the available scientific data and conducting its own studies and testing, the NMFS held meetings with a "working group" to review all the data and make recommendations for proposed regulations. Included in this working group was: The Center for Environmental Education, The Environmental Defense Fund, the Fund for Animals, Greenpeace, Monitor International, the Bryan Country (Georgia) Fisheries Cooperative, the Concerned Shrimpers of Louisiana, the Louisiana Shrimp Association, the Southeastern Fisheries Association, the South

**3.** Presence of Sea Turtles in La.–A.R.Vol. 1 M–14, M–16, M–19, M–23, M32–35, M–25, M–22, M–38, M–59–M59.15, Vol. 3, M59–31, Vol. 4 E7–9, E23, Vol. 5 E35, Vol. 8, 58, 516, Vol. 9 C5.S20. Impact of Shrimp Trawling on sea turtle mortality. A.R.Vol. 1 M22, M38, M59, M59.5, Vol. 4 E8, E9 Vol. 9 S20.
TED Testing A.R. Vol. 3 M63; Vol. 5 E44, E45, E46; Vol. 9 S47. Effect of TEDS on economy A.R. Vol 1 M11 Vol 5 E48.
Effect of tow times on Capture of Turtles: A.R. Vol. 3 M59–18, Vol. 4 E8, E9.

**4.** Data of Shrimping Activities in inshore waters and capture of turles: A.R. Final Supplement to

the Final Environmental Impact Statement A.R. Vol. 4 E–1, p. 40 the NMFS admits they *lack* "data for inshore shrimping activities." See also, Sea Turtle Conservation; Shrimp Trawling Requirements; Final Rule, 52 Fed.Reg. 24246 (1987).

**5.** "NMFS is aware of the limited scientific data on the incidental mortality of sea turtles and TED effectiveness in certain areas, particularly inshore waters ... Because of this disparity, NMFS agrees that it is not appropriate at this time to require TEDs to be used in both inshore and offshore waters by all shrimp trawlers." 52 Fed.Reg. 24,246 (1987).

Carolina Shrimpers Association and the Texas Shrimp Association.[6]

After publication of the proposed rules, 16 public hearings were held and comments were received. A.R. Vol. 12. These comments were taken into consideration by the Secretary and responded to in the promulgation of the regulations. A.R. Final Supplement to the Final Environmental Impact Statement; 52 Fed.Reg. 24,246 (1987).

On its face the administrative record amply supports the Secretary's decision to issue the regulations in question. The regulations are not arbitrary or capricious. There is a rational basis upon which the regulations were promulgated.

## IV.  *Procedural Compliance:*

The plaintiff contends that the defendant did not give adequate notice of a major change in the rules as adopted and that the hearings were not sufficiently noticed. 5 U.S.C. § 553(b) states in part:

*Rule Making:*

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

■■■ The plaintiff asserts that rule making process began with the meetings of the "working group". However, the rule making process begins with the publication of the proposed rules in the Federal Register. 5 U.S.C. § 553(b). An agency is not required to provide oral hearings unless it is compelled to by statute. *American Transfer & Storage Co. v. I.C.C.,* 719 F.2d

1283, 1301 (5th Cir.1983). The E.S.A. 16 U.S.C. § 1531 et seq. does not require public hearings. However, the Secretary, in his discretion, conducted 16 public hearings. Notice of the public hearing schedule was published in the Federal Register at 52 Fed.Reg. 6,182 (1987) in accordance with the Administrative Procedure Act.

The plaintiff argues that NMFS violated administrative procedure by adopting final rules that were dramatically and substantially different than the rules proposed. The proposed rules contained no limitation on the amount of time a shrimper may trawl and the final rule adopts a limitation on towing times for inshore waters and trawlers under 25 feet. The plaintiff asserts that the public had no opportunity to comment on the effectiveness of towing times.

■■■ The agency need not specify every proposal precisely, as long as the final rule is a logical outgrowth from the proposed rule. *Brazos Electric Power Co-op, Inc. v. SWPA,* 819 F.2d 537 (5th Cir.1987). See also, *Taylor Diving and Salvage v. United States Dept. of Labor,* 599 F.2d 622 (5th Cir.1979).

> "To require in each case a new notice and a new round of comments after revision of a proposed rule would unduly burden and delay the rule making process. An agency 'need not subject every incremental change in its conclusions after each round of notice and comment to further public scrutiny before final action.' *Weyerhaeuser v. Costle,* 590 F.2d 1011, 1031 (D.C.Cir.1978)."

*Brazos,* supra at 542–3.

In *Pennzoil Co. v. Federal Energy Regulatory Commission,* 645 F.2d 360 (5th Cir.1981) the court stated:

> "FERC's position in Order No. 23 was a sharp change from that in its Notice of Proposed Rulemaking. Fundamentally, this demonstrates not that the agency acted arbitrarily, but simply that the administrative process was working. The purpose of the Administrative Procedure

6. The plaintiff objects to these meetings because they were not noticed and failed to allow the

public to participate. (discussed infra)

Act (APA) notice and comment requirement is that the agency educate itself before adopting a final order. This assures fairness and mature consideration of rules having a substantial impact on those regulated. See *Brown Express Co. v. United States*, 607 F.2d 695, 701 (5th Cir.1979). Simply because a different rule is adopted does not require a new notice and comment procedure if, as required by 5 U.S.C.A. § 553(b)(3), the notice of proposed rulemaking includes the terms or substance of the proposed rule or a description of the subjects and issues involved. This requirement is to sufficiently and fairly apprise interested parties of the issues involved, rather than to specify every precise proposal that the agency may ultimately adopt. *Action for Children's Television v. FCC*, 564 F.2d 458, 470 (D.C.Cir.1977) . . .

Since FERC had a duty to consider the submitted comments, and since modification of proposed rules in light of written and oral presentations is the heart of the rulemaking process, FERC did not violate the APA." *Id.* at 371–72.

█ In the instant case the proposed rules in the Federal Register (A.R.Vol. 6 R5) did not mention reduced tow times as a possible rule. The proposed rules dealt only with the use of the TED. However, the broader issue of reducing mortalities of turtles by shrimp trawls was adequately outlined. The regulations concerning tow times was a logical outgrowth of the comment solicitation. The reduced tow times were frequently suggested in the public comments. AR Vol 4 E1 and Vol 1 R14. The limitation on tow times was proposed in a Draft Supplemental Environmental Impact Statement which was sent out to numerous groups. AR Vol. E2. Also, the Attorney General of Louisiana, William J. Guste, Jr. commented on reduced tow times in a letter dated Feb. 11, 1987. A.R.Vol. 3 E1. Clearly, there was no surprise when the final regulations included limitations on tow times.

Accordingly, the defendant's and intevenors' motions for summary judgment are GRANTED and the plaintiff's motion for summary judgment is DENIED.

## JUDGMENT

In accordance with the Order and Reasons rendered this date,

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of C. William Verity, Jr., Secretary, United States Department of Commerce and Intervenors, The Environmental Defense Fund and The Center for Environmental Education, and against plaintiff, State of Louisiana, ex rel William J. Guste, Jr., and Intervenor, the Concerned Shrimpers of Louisiana, Inc., dismissing plaintiff's suit with prejudice.