**STATE OF NEBRASKA, Plaintiff,**

**v.**

**CENTRAL INTERSTATE LOW–LEVEL RADIOACTIVE WASTE COMMISSION, Defendant.**

**No. 4:CV96–3438.**

United States District Court, D. Nebraska.

April 10, 1997.

William M. Lamson, Jr., Kennedy, Holland Law Firm, Omaha, NE, Donald B. Stenberg, Linda L. Willard, Atty. General's Office, Lincoln, NE, for Plaintiff.

John P. Heil, Thomas E. Johnson, Jon E. Blumenthal, Baird, Holm Law Firm, Omaha, NE, for Intervenors.

Alan E. Peterson, Shawn D. Renner, Cline, Williams Law Firm, Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

Pending before the court is a motion by the defendant, a commission governing an interstate waste compact, to strike the State of Nebraska's demand for trial by jury in an ongoing dispute over regulatory authority. (Filing 9.) This case raises an issue of first impression, unaddressed in any reported court decision: whether the parties to an interstate compact are entitled to jury resolution of disputes arising under the compact. For the reasons discussed more fully below, I shall grant the motion to strike.

## BACKGROUND

Following passage of the Low–Level Radioactive Waste Policy Act, Pub.L. No. 96–573, 94 Stat. 3347 (1980), Nebraska, Louisiana, Oklahoma, Kansas, and Arkansas formed the Central Interstate Low–Level Radioactive Waste Compact ("the Compact") for the purpose of constructing a shared radioactive waste disposal facility. As required by the Act, the member states obtained the consent of Congress to formation of the Compact. *Nelson v. Central Interstate Low–Level Radioactive Waste Comm'n*, 902 F.Supp. 1046, 1047 (D.Neb.1995). In addition, they established the Central Interstate Low–Level Radioactive Waste Commission ("the Commission") as its governing body. *Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n*, 970 F.2d 421, 423 (8th Cir.1992). Under the terms of the agreement, the Commission is a legal entity separate and distinct from the member states, with the right to sue and be sued. *Compact* Art. IV(k)(2) (reprinted in the Revised Statutes of the State of Nebraska Annotated, § 71–3521 at vol. 71, pp. 600–09 (Michie 1995)).

After reviewing several potential locations, the Commission selected Boyd County, Nebraska as the site for the facility and then contracted with a private corporation, U.S. Ecology, Inc., to develop and operate it. *Concerned Citizens*, 970 F.2d at 423. US Ecology's application for a license to operate the facility is currently under review by the

Nebraska Department of Environmental Quality and the Nebraska Department of Health, the two state agencies charged under Nebraska state law with regulating the licensing, construction, and operation of all radioactive waste facilities in the state. (Filing 1 at ¶ 8–14.) On September 30, 1996 the Commission passed two resolutions responsible for the present litigation:[1] First, the Commission issued an ultimatum proclaiming that "the State of Nebraska must issue the Draft Environmental Impact Analysis and Draft Safety Evaluation Report and a draft license between December 14, 1996, and January 14, 1997." In effect, the ultimatum prohibits Nebraska state agencies from denying the license application and sets deadlines for issuing such a license, even though no such deadlines exist under Nebraska state law. (*Id.* at ¶ 16.) Second, the Commission established a single, consolidated period for public hearing and comment, which is contrary to the expansive comment-and-hearing periods established by Nebraska state regulations. (*Id.* at ¶ 17.)

On November 27, 1996 the State of Nebraska filed in this court a complaint seeking a declaration that the deadlines and restrictions imposed by the Commission violate state and federal law as well as the terms of the Compact. (Filing 1 at ¶ 19.) The complaint also contains a demand for trial by jury. (*Id.* at p. 10.) The Commission has moved to strike that demand on two grounds: (1) the Commission "possesses sufficient characteristics of sovereignty to bar a jury trial"; and (2) this is not an action for which a jury trial is required by the Seventh Amendment to the Constitution or a statute of the United States. (Defendant's Brief at 1–3.)

1. This action is the latest in a series of lawsuits filed by Nebraska residents and policymakers over the existence of and authority to regulate the facility. *See, e.g., Concerned Citizens, supra; Nelson, supra; County of Boyd v. U.S. Ecology, Inc.,* 858 F.Supp. 960 (D.Neb.1994), *aff'd,* 48 F.3d 359 (8th Cir.1995); *State ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Comm'n,* 834 F.Supp. 1205 (D.Neb.1993), *aff'd,* 26 F.3d 77 (8th Cir.1994), *cert. denied,* 513 U.S. 987, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994).

## DISCUSSION

### (1) Commission Sovereignty

■ The Commission asserts that its self-professed "modicum of sovereignty"-of which it contends the court "need not discern the precise nature or level"-likens it to a state of the union, thus inoculating it from a jury demand. (Defendant's Brief at 3–4). An examination of the history, purpose, and nature of interstate compacts reveals that the Commission is not a "quasi-sovereign" as it claims.

■ The Compact Clause of the Constitution provides that "No state shall, without the Consent of Congress[,] ... enter into any Agreement or Compact with another State...." U.S. Const., Art. I, § 10, cl. 3. "By vesting in Congress the power to grant or withhold consent, or to condition consent on the States' compliance with specified conditions, the Framers sought to ensure that Congress would maintain ultimate supervisory power over cooperative state action that might otherwise interfere with the full and free exercise of federal authority." *Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 706–07, 66 L.Ed.2d 641 (1981) (citing Frankfurter & Landis, *The Compact Clause of the Constitution–A Study in Interstate Adjustments,* 34 Yale L.J. 685, 694–95 (1925)). "Congress does not pass upon a submitted compact in the manner as a court of law deciding a question of constitutionality. Rather, the requirement that Congress approve a compact is to obtain its political judgment" about the compact's potential effect on national interests. *United States Steel Corp. v. Multistate Tax Comm'n,* 434 U.S. 452, 485, 98 S.Ct. 799, 819, 54 L.Ed.2d 682 (1978) (White, J., dissenting).[2] Although congressional consent transforms interstate agreements into a fed-

2. Occasionally Congress actively promotes formation of interstate agreements, as it did with low-level radioactive waste compacts, in order to assist in managing problems of a regional nature. *See Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 40–42, 115 S.Ct. 394, 401, 130 L.Ed.2d 245 (1994); *see generally New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (discussing the extent of congressional encouragement in forming multistate waste compacts).

eral law and creates federal subject matter jurisdiction over disputes arising thereunder, *Petty v. Tennessee–Missouri Bridge Comm'n,* 359 U.S. 275, 278, 79 S.Ct. 785, 788, 3 L.Ed.2d 804 (1959), the compact does not create a separate sovereign state, and its powers are in no way equivalent to that of an independent sovereign. *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 40–44, 115 S.Ct. 394, 401–02, 130 L.Ed.2d 245 (1994); *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 311, 110 S.Ct. 1868, 1875, 109 L.Ed.2d 264 (1990) (Brennan, J., concurring) (a compact is a multistate "agency"; "it is not one of the United States."); *Washington Metro. Area Transit Author. v. One Parcel of Land,* 706 F.2d 1312, 1316 (4th Cir.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983) (a compact is not a sovereign). *See also Marcella v. Brandywine Hosp.,* 47 F.3d 618, 624 (3d Cir.1995) (organizations are not "federal agencies" for purposes of the Seventh Amendment merely because they are organized by a federal charter or receive federal money).

In a series of cases holding that interstate compacts are presumed not to possess immunity from suit under the Eleventh Amendment, the Supreme Court has made clear that bodies governing administration of interstate compacts are merely "joint agencies" or "discrete entit[ies]" created by agreement of the party states. *Hess,* 513 U.S. at 51–53, 115 S.Ct. at 406. *See also Feeney, supra,* at 311–16, 110 S.Ct. at 1875–79; *Petty,* 359 U.S. at 279, 79 S.Ct. at 788–89. A passage from the Court's opinion in *Hess* is particularly enlightening:

> Because Compact Clause entities owe their existence to state and federal sovereigns acting cooperatively, and not to any "one of the United States," their political accountability is diffuse; they lack the tight tie to the people of one State that an instrument of a single State has:
>
> > "An interstate compact, by its very nature, shifts a part of a state's authority to another state or states, or to the agency the several state jointly create to run the compact. Such an agency under the control of special interests or gubernatorial appointed representatives is two

or more steps removed from popular control, or even of control by a local government." M. Ridgeway, Interstate Compacts: A Question of Federalism 300 (1971).

> In sum, within any single State in our representative democracy, voters may exercise their political will to direct state policy; [multi]state entities created by compact, however, are not subject to the unilateral control of any one of the States that compose the federal system.

*Id.* at 42, 115 S.Ct. at 401–02.

It therefore follows from the reasoning in Hess that an interstate compact is too remote from voting citizens to be considered a "sovereign" or "quasi-sovereign" in our republican form of government. *See id.* It exercises only a slice of delegated state authority, and it does so only within a narrowly confined area. *Id.* at 47–48, 115 S.Ct. at 404. Ultimate control of such entities lies with the states themselves, who "may destroy or reshape any unit [they] create." *Id.* Any power, immunity, or privilege exercised by Compact Clause entities is derived wholly from the states and may be modified by those states. *See id.* at 47–53, 115 S.Ct. at 404–06; *Feeney, supra,* at 312, 110 S.Ct. at 1876.

Here, the Central Interstate Low–Level Radioactive Waste Commission simply administers a regional waste compact-it exercises authority only in a very narrow sphere and only as an amalgamation of the interests of its member states. *Concerned Citizens,* 970 F.2d at 422–23. Its limited authority, and its dependence on member states of the Compact for that authority, is far too removed from the full power and autonomy of a state in our federal system for it to be considered a "quasi-sovereign." *See Hess, supra,* 513 U.S. at 47–48, 115 S.Ct. at 404. Therefore, the Commission's argument that it has an amorphous right not to be subjected to trial by jury fails.

The Commission's claim that it is a quasi-sovereign is separate from the more appropriate inquiry: **how the nature of the Compact relates to the cause of action before the court.** *Markman v. Westview Instruments, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1384, 1389, 134 L.Ed.2d 577 (1996). If the

Commission's position that it is a sovereign were true, not even a private plaintiff in an action against the Commission could demand trial by jury, regardless of the nature of the action or parties involved. *See Gragg v. City of Omaha,* 812 F.Supp. 991 (D.Neb.1993), *aff'd,* 20 F.3d 357 (8th Cir.1994) (no constitutional right to trial by jury in a lawsuit against a state). As explained above, however, the Commission is simply not a sovereign. I now turn to the proper inquiry.

### (2) Interstate Compacts and Right to Trial by Jury

Rule 38(a) of the Federal Rules of Civil Procedure decrees, "The Right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." F.R.C.P. 38(a). Thus, the State of Nebraska is entitled to trial by jury if either (a) a federal statute provides for trial by jury, or (b) the Constitution preserves the right to jury resolution of the particular claims at issue in this litigation. *Id.*

### (a) Right Under the Terms of the Compact

 The State contends that because its claims arise out of a federal statute (the congressionally ratified Compact), it is entitled to trial by jury. It is true as a general matter that "congressional consent transforms an interstate compact into a law of the United States...." *Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 706–07, 66 L.Ed.2d 641 (1981). Thus, because Congress ratified the Central Interstate Low–Level Radioactive Waste Compact, its terms may be viewed as provisions of a federal statute. *See id.* Contrary to the State's contentions, however, a party is not entitled to a jury trial merely because the action arises under federal legislation; the statutory scheme must *explicitly* provide for one. *Waldrop v. Southern Co. Services, Inc.,* 24 F.3d 152, 155 (11th Cir.1994). "If the statute and its legislative history are silent regarding the right to a jury trial," then a party is entitled to one only if constitutionally required. *Id.; see also Bowdry v. United Airlines, Inc.,* 58 F.3d 1483, 1489 (10th Cir.1995).

The States concedes that the terms of the Compact are silent regarding jury resolution of disputes arising under the Compact; however, it contends, "The fact that the Compact Agreement is silent on the right to trial by jury implies that each of the member states intended for disputes to be resolved by a jury where demanded pursuant to the 'applicable' rules of procedure.'" (Plaintiff's Brief at 23) (quoting *Compact,* Art. IV(1)). This reasoning is circular. The Federal Rules of Civil Procedure provide that a party may demand a jury only where such a right is conferred by the Constitution or federal statute; the rules themselves do not enlarge the right to trial by jury beyond constitutional or statutory guarantee. F.R.C.P. 39(a); *Leimer v. Woods,* 196 F.2d 828 (8th Cir.1952). Hence, a general reference in the Compact to federal procedural rules cannot provide for a right to trial by jury, because the federal rules themselves provide for such a right only where specifically authorized by statute or preserved by the Constitution. *Id.* The rules merely refer back to the terms of the Compact, which say nothing about trial by jury. *See Compact* Art. IV. Consequently, the State may invoke a jury trial only if guaranteed by the Seventh Amendment. *Waldrop, supra;* Bowdry, *supra.*

### (b) The Seventh Amendment

 The Seventh Amendment provides, "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend. VII. The "surface simplicity of this provision," however, has proven "beguiling," because its application often requires courts to delve into the frequently obscure history of English and early American common law. *Standard Oil Co. of California v. Arizona,* 738 F.2d 1021 (1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 815, 83 L.Ed.2d 807 (1985) (quoting *In re U.S. Financial Securities Litigation,* 609 F.2d 411, 421 (9th Cir.1979), *cert. denied,* 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980)). To determine whether in a particular case the Seventh Amendment guarantees the right to trial by jury, the court must consider whether the cause of action was one "tried at law at the time of the Founding or is at least analogous to one that was. If the action in

question belongs in the law category," the court then "must ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." [3] *Markman v. Westview Instruments, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1384, 1389, 134 L.Ed.2d 577 (1996).

■ Although the State brought this case as an action seeking a declaratory judgment, (*see* filing 1), the procedural posture of the parties is without consequence. *Simler v. Conner,* 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); *James v. Pennsylvania Gen. Ins. Co.,* 349 F.2d 228 (D.C.1965). The issue is simply whether the claims raised would have warranted a jury regardless of how brought. 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2313, at 108–09 (citing cases). The nature of the dispute dictates the inquiry, not the fact that the action originated as one for a declaratory judgment. *Id.*

■ While the State concedes that "interstate compacts ratified by Congress pursuant to Article I, Section 10 of the Constitution were not recognized by the common law as it existed in 1791," (Plaintiff's Brief at 17–18), it contends that, nevertheless, it is entitled to a jury because this action "raises legal claims analogous to rules of contract construction familiar to the common law as it existed in 1791." (*Id.* at 18–19.) In essence, the State contends that the Central Interstate Waste Compact is a contract and that the nature of the dispute is akin to an action for breach of contract, an action at law which would entitle it to a jury. (*Id.*) I conclude, however, that the dispute arising under this particular compact is much more sophisticated than the interpretation of a contract.

It is true that in some contexts members of the Supreme Court have stated "a Compact is ... a contract." *Texas v. New Mexico,* 482 U.S. 124, 128, 107 S.Ct. 2279, 2283–84, 96 L.Ed.2d 105 (1987) (quoting *Petty v. Tennessee–Missouri Bridge Comm'n,* 359 U.S. 275, 285, 79 S.Ct. 785, 791–92, 3 L.Ed.2d 804 (1959)) (Frankfurter J., dissenting); *see also Oklahoma v. New Mexico,* 501 U.S. 221, 242, 111 S.Ct. 2281, 2293, 115 L.Ed.2d 207 (1990) (Rehnquist, C.J., concurring in part and dissenting in part). The situations involved in those cases, however, were different from the case at bar. In both *Texas* and *Oklahoma,* the compacts at issue dealt with the construction and enforcement of agreements apportioning water rights from rivers running through the member states. The compacts in those cases were essentially nothing more than contracts between the states specifying how a limited resource would be divided. In *Petty,* the Court was called upon to construe specific terms of an interstate compact in order to determine whether the member states waived any right to Eleventh Amendment immunity that they might have been able to claim. 359 U.S. at 276–283, 79 S.Ct. at 787–91. Again, simple contract interpretation of specific terms of the compact dictated the outcome of the *Petty* case.

The dispute in this case is far different, for three reasons. First, there is no contract between the disputants. This action stems from independent decisions of the Central

---

**3.** Although the parties have neglected the issue, it may be questioned whether the Seventh Amendment guarantees any state of the union trial by jury. Thus far, only the Ninth Circuit Court of Appeals has considered the matter in depth, and it concluded that the Seventh Amendment does guarantee the right to states, where guaranteed to other citizens. *See Standard Oil Co. of Cal. v. Arizona,* 738 F.2d 1021, 1026–32 (9th Cir.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 815, 83 L.Ed.2d 807 (1985). The court reasoned that while there were no states in England in 1791, states in our federal system are in a position similar to that of the English crown and that in 1791 "the crown was entitled to jury trial on demand under the common law." *Id.* at 1027–28 (citing as an example *King v. Cotton,* 145

Eng.Rep. 729 (1751) (dispute between the crown and a noble about who had priority as creditor of a bankrupt)). "In fact, trial by jury was originally a royal, as opposed to popular right." *Standard Oil,* 738 at 1028 (citing *E.E.O.C. v. Corry Jamestown Corp.,* 719 F.2d 1219, 1224 (3d Cir. 1983) and 1 F. Pollack & F. Maitland, The *History of English Law* 140 (2d ed. 1898 reprinted 1952)). Furthermore, the Court found nothing in the Seventh Amendment's scope or legislative history which demonstrates that the Framers intended to limit its guarantee only to individuals. *Standard Oil,* 738 F.2d at 1028–1030. I find the Ninth Circuit's opinion persuasive and likewise conclude that states may demand a jury trial where otherwise preserved by the Seventh Amendment.

Interstate Low–Level Radioactive Waste Commission. Under the terms of the agreement, the Commission is a legal entity separate and distinct from the member states, charged with governing the Compact. *Compact* Art. IV(k)(2) (reprinted in the Revised Statutes of the State of Nebraska Annotated, § 71–3521 at vol. 71, pp. 600–09 (Michie 1995)). Unlike a dispute over the meaning of specific terms of the Compact, here a "discrete entity" that has a legal existence all its own, *see Hess, supra,* 513 U.S. at 40–44, 115 S.Ct. at 401–02, has made independent decisions to which the State of Nebraska has taken exception. Quite obviously, a dispute over the lawfulness of independent decisions of a distinct legal entity created by but not itself a party to the Compact is a far different matter from interpreting terms of a compact where the disputants are compacting states themselves. Put differently, the defendant in this case, the Commission, is *not* a party to the Compact; rather, it is an entity created by the Compact. *See generally Compact* Art. IV. There is no contract between the State and the Commission; consequently, the State's claims against the Commission are not contractual.

■ Second, an analysis of the separate claims against the Commission reveals that they cannot support a jury demand. First, the State claims that the Commission's actions violate the Tenth Amendment of the United States Constitution.[4] (Filing 1 at ¶¶ 1 and 19.) The Tenth Amendment makes explicit that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const.Amend. X. Regarding the Com-

pact as federal law, determination of whether it encroaches upon state powers in violation of the Tenth Amendment is clearly a question for the judiciary, not a jury. *See, e.g., New York v. United States,* 505 U.S. 144, 155–59, 112 S.Ct. 2408, 2417–2419, 120 L.Ed.2d 120 (1992) (explaining the questions the Supreme Court considers in deciding Tenth Amendment issues). The ordinary defendant in such a case is the United States government, a party which cannot be subjected to a jury trial absent a valid waiver by statute or otherwise. *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2314, at 111–16. As noted, the State has not shown any waiver here. As such, there can be little doubt that the State's Tenth Amendment claim is not amenable to jury trial and is not analogous to an action that would have proceeded to jury trial at common law in 1791.[5]

■ The State further complains that the way in which the Commission issued the proclamations violated its right to procedural due process and the proclamations themselves were "unreasonable" and violated its right to substantive due process. (Filing 1 at ¶ 19.) The Fourteenth Amendment provides in pertinent part, "No ... State shall deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV. By its very terms the Due Process Clause protects persons against the power of the states; it does not entitle the states themselves to its protections.[6] *See, e.g., Commonwealth of Pennsylvania v. Porter,* 659 F.2d 306, 314 (3rd Cir.1981), *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982); *State of Louisiana ex rel. Guste v. Verity,* 681 F.Supp. 1178

---

4. The complaint also alleges that the Commission violated Nebraska state law, but it fails to specify in any way what particular statutes or regulations the Commission has allegedly violated. (*See* filing 1.)

5. Nor is the Supreme Court's decision in *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), which held that plaintiffs bringing actions under 42 U.S.C. § 1983 are entitled to trial by jury, applicable here, because *Curtis* specifically relied on the premise that "[a] damages action under [§ 1983] sounds basically in tort-the statute merely defines a new legal duty and authorizes the courts to compensate a plain-

tiff for the injury caused by the defendant's wrongful breach." *Id.* at 195, 94 S.Ct. at 1009. The State does not attempt to argue that this matter is somehow analogous to a tort, and I fail to perceive any way that it might be.

6. I need not address the curiosity of the State's apparent position that the Commission is not a "sovereign" for purposes or right to a jury trial, yet somehow is *both* a "state" for purposes of the Fourteenth Amendment and a federal entity for purposes of the Tenth Amendment. To the extent the Commission is a federal entity, the previous discussion regarding the Tenth Amendment applies.

(E.D.La.), *aff'd,* 853 F.2d 322 (5th Cir.1988); *Wisconsin v. Zimmerman,* 205 F.Supp. 673 (W.D.Wis.1962); *State v. Roseberry,* 37 Ariz. 78, 289 P. 515 (Az.1930). *Cf. Pennsylvania v. New Jersey,* 426 U.S. 660, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976) (the Fourteenth Amendment's privileges and immunities clause protects people, not states).

 While the State does claim that the Commission has violated certain express terms of the Compact, the terms claimed to have been violated are no in way analogous to terms one would expect to find in a contract between private parties.[7] For instance, the State claims the decisions of the Commission violated the following provisions of the Compact: (1) "a host state shall regulate and license any regional facility within its borders ..."; (2) no Compact terms shall be construed to "[a]lter the relations between, and the respective internal responsibilities of, the government of a party state and its subdivisions ..."; and (3) no Compact terms shall be construed to "[p]revent the application of any law which is not otherwise inconsistent with this Compact." (Filing 1 at ¶ 19.) The State also contends that the process initiated to adopt the motions was undertaken without authorization under any Compact provision. Even though these claims involve alleged violations of terms of the Compact, they are *not* contractual claims; they are really claims regarding the authority of a joint governmental entity, the Commission, to issue the proclamations that are the subject of this litigation. Under these circumstances the Compact is best viewed as the federal statute that created the Commission, *see, Hess,* 513 U.S. at 40–53, 115 S.Ct. at 401–06, and the State's claims are best viewed as claims that the Commission has exceeded its authority under the statute that created it. Essentially, the litigation is centered around one issue: whether the Commission's actions were ultra vires. Even where the decision-maker is a private corporation, there is no right to trial by jury for an ultra vires action. *In re Energy Resources Co. v. Rosen,* 49 B.R. 278, 283 (Bankr.D.Mass.1985).

 Third, even if I were to accept Nebraska's unstated premise that the Commission is somehow a party to the Compact, the unique public aspect of the Commission distinguishes this case from a private contract dispute.[8] Although the Interstate Waste Commission is not a sovereign, its member states are. *Hess,* 513 U.S. at 40–44, 115 S.Ct. at 401–02. The Commission acts, on the scope at issue here, only through the joint decision of representatives of each of its member states, with each state casting one vote. (*See id.* at ¶ 16–17.) Thus, to the extent that the Commission may somehow be viewed as a party to the Compact (as opposed to a creation arising out of the Compact), then the rights and responsibilities of the other member states are also at stake. *See Hess,* 513 U.S. at 51–53, 115 S.Ct. at 406. For example, if the State of Nebraska may delay issuing a license into perpetuity, then Louisiana, Oklahoma, Kansas, and Arkansas must make other arrangements for the disposal of their low-level radioactive waste. Thus, if this matter were a contract dispute at all, it most nearly would resemble a dispute between several different states. Even if this court could somehow exercise jurisdiction over such a dispute, there is no authority for trial by jury when the interests of different states are in conflict. In fact, our constitutional system provides otherwise.

---

7. The State speculates that it may be subjected to a suit for damages for its failure to abide by the Commission's declarations; however, the Commission's answer does not set forth a counterclaim seeking such damages. (*See* filing 7.) Moreover, while the answer does allege that the State breached certain provisions of the Compact, the Commission raises the issue only as a defense that "Nebraska has forfeited, under the equitable doctrines of waiver and estoppel, any right it may have had to complain of the Commission's actions." (*Id.* at ¶ 22.) Equitable claims are not ordinarily subject to trial by jury. *See, e.g., Howard v. United States,* 214 F.2d 759,

762 (10th Cir.1954). In addition, as discussed below, the nature of the parties in this case substantially impacts the Seventh Amendment issue.

8. For that reason I find the most analogous case on which the State relies, *Stewart v. KHD Deutz of America Corp.,* 75 F.3d 1522 (11th Cir.1996) (finding a right to trial by jury in an ERISA dispute arising from a collective bargaining agreement), inapplicable because it involved a disagreement solely between private parties.

Article III, § 2, of the Constitution extends federal judicial power to "controversies between two or more states," and Congress has made the Supreme Court's original jurisdiction over such controversies "exclusive." 28 U.S.C. 1251. As a result, the nation's jurisdictional scheme channels disputes between states into a forum in which no jury sits. If the Supreme Court is required to undertake factual findings in cases that arise under its original jurisdiction, it has done so by means of a special master, almost always a federal judge, never by jury. *See, e.g., Oklahoma v. New Mexico,* 501 U.S. 221, 111 S.Ct. 2281, 115 L.Ed.2d 207 (1990); *Texas v. New Mexico,* 482 U.S. 124, 107 S.Ct. 2279, 96 L.Ed.2d 105 (1987). This national preference for resolution of disputes between states by judicial factfinders is underscored by the potential result in this case: If the State of Nebraska's jury demand were allowed to stand, then jurors taken exclusively from the State of Nebraska would sit in judgment over the actions of a commission that embodies the interests of four other sovereign states. That result is strikingly at odds with our federal system. Consequently, even if the Commission is viewed as a party to the Compact, I conclude that the State of Nebraska is not entitled to trial by jury in this case. *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2302 at 18 ("There is no right to jury trial if viewed historically the issue would have been tried in the courts of equity or otherwise would have been tried without a jury.")

Therefore, in accordance with the foregoing discussion,

**IT HEREBY IS ORDERED:**

1. The Commission's motion to strike the State of Nebraska's jury demand, (filing 9), is granted.

2. The State of Nebraska's motion for oral argument, (filing 15), is denied.