## TEXAS v. NEW MEXICO

No. 65, Orig. Argued March 24, 1980—Decided May 19, 1980

*Douglas G. Caroom,* Assistant Attorney General of Texas, argued the cause for plaintiff. With him on the briefs were *Mark White,* Attorney General, *John W. Fainter, Jr.,* First Assistant Attorney General, and *Ted L. Hartley,* Executive Assistant Attorney General.

*Richard A. Simms,* Special Assistant Attorney General of New Mexico, argued the cause for defendant. With him on the briefs were *Jeff Bingaman,* Attorney General, and *G. Emlen Hall, Charles M. Tansey,* and *Jay F. Stein,* Special Assistant Attorneys General.

*Solicitor General McCree* filed a memorandum for the United States as intervenor.

PER CURIAM.

Upon consideration of the report filed October 15, 1979, by Senior Judge Jean S. Breitenstein, Special Master, and the exceptions thereto, and on consideration of briefs and oral argument thereon,

IT IS ADJUDGED, ORDERED, AND DECREED that all exceptions are overruled, the report is in all respects confirmed, and the ruling of the Special Master on the "1947 condition" as that term appears in Arts. II (g) and III (a) of the Pecos River Compact is approved.

MR. JUSTICE STEVENS, dissenting.

Under the Pecos River Compact of 1949, ch. 184, 63 Stat. 159, the State of New Mexico has a duty "not [to] deplete by man's activities the flow of the Pecos River at the New

Mexico-Texas state line below an amount which will give to Texas a quantity of water equivalent to that available to Texas under the 1947 condition."

Article VI (c) of the Compact provides that the "inflow-outflow" method is to be used to determine whether New Mexico is complying with this obligation.[1] Briefly stated, this method involves the development of a correlation between the inflow to a basin and the expected outflow so that, for any given inflow, engineers can estimate the amount of water that should flow through and should therefore be available for downstream (in this case Texas') use. In a river routing study made available to the Commissioners prior to the signing of the Compact, engineers attempted to develop such a correlation for the Pecos by calculating for each year from 1905 to 1946 what the outflow would have been at various points if the New Mexico water uses in place in 1947 had been in place in prior years as well. This study was then to be used as a baseline in comparing future inflow and outflow in order to determine whether New Mexico was using a larger share of the river water than it had in 1947, in violation of the Compact.

For years after the Compact was signed, there were disputes between the States over the proper application of the inflow-outflow method. Both sides recognized that the routing study contained some errors, and they attempted to correct those errors through negotiation. When negotiations ultimately failed, Texas brought this suit, alleging that New Mexico had breached its obligations under the Compact by using more water than it was entitled to use under the proper definition of the "1947 condition."

One of the main issues before the Special Master was the meaning of the term "1947 condition." The Master found

---

[1] This method is to be used "unless and until a more feasible method is devised." See Art. VI (c). In this proceeding the States agree that the inflow-outflow method continues to apply.

that the term referred only to depletions due to the New Mexico water uses that were in place in 1947, along with certain projected uses.[2] He therefore held that the errors in the old routing study had to be corrected before that study could be used in determining compliance. In its objections to the Master's report, Texas takes the position that the "1947 condition" refers not to actual physical conditions on the river, but rather to the baseline values developed through the 1947 routing study. It therefore argues that, in the absence of agreement, the parties must continue to use that study, despite its errors, in determining compliance.

The objections filed on behalf of the State of Texas persuade me that the Master's definition is not the one the two States agreed upon when they entered into the Compact. Article II (g) provides that, as used in the Compact:

> "The term '1947 condition' means that situation in the Pecos River Basin as described and defined in the Report of the Engineering Advisory Committee. In determining any question of fact hereafter arising as to such situation, reference shall be made to, and decisions shall be based on, such report."

The routing study that Texas relies upon was a part of the Report of the Engineering Advisory Committee as that term is defined in the Compact.[3] It therefore, in my opinion, be-

---

[2] The Master defined the term as follows:

"The 1947 condition is that situation in the Pecos River Basin which produced in New Mexico the man-made depletions resulting from the stage of development existing at the beginning of the year 1947 and from the augmented Fort Sumner and Carlsbad acreage."

[3] The routing study was Appendix A to the Report. Article II (f) provides:

"The term 'Report of the Engineering Advisory Committee' means that certain report of the Engineering Advisory Committee dated January 1948, and all appendices thereto; including, basic data, processes, and analyses utilized in preparing that report, all of which were reviewed, approved, and adopted by the Commissioners signing this Compact at a meeting held

came a part of the Compact definition of the 1947 condition to which the parties agreed. Although this concededly makes the term "1947 condition" an "artificial" definition, rather than a description of actual conditions, the fact that the parties agreed to base their decisions on all questions of fact on that Report indicates that the parties also agreed to use the routing study as a basic frame of reference. Moreover, had the parties merely intended to describe the New Mexico water uses that existed in 1947, I believe they would have used language similar to that employed by the Master and would not have included the detailed reference to the Report of the Engineering Advisory Committee in both Arts. II (g) and II (f). Finally, the fact that the parties later recognized some errors in that study and attempted to rectify them through negotiation does not, in my judgment, change the meaning of the Compact itself. Accordingly, I would sustain the objections of the State of Texas.

---

in Santa Fe, New Mexico, on December 3, 1948, and which are included in the Minutes of that meeting."