# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3858

_____

| | | |
|---|---|---|
| State of Nebraska, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| Entergy Arkansas, Inc.; Entergy Gulf | * | |
| States, Inc.; Entergy Louisiana, Inc.; | * | |
| Wolf Creek Nuclear Operating | * | |
| Corporation, | * | Appeal from the United States |
| | * | District Court for the District |
| Intervenor Plaintiff/Appellees, | * | of Nebraska. |
| | * | |
| v. | * | |
| | * | |
| Central Interstate Low-Level | * | |
| Radioactive Waste Compact | * | |
| Commission, | * | |
| | * | |
| Defendant/Appellee. | * | |

_____

Submitted:  May 10, 1999

Filed:  August 16, 1999

_____

Before WOLLMAN, Chief Judge, BEAM and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

The State of Nebraska (Nebraska or the State) appeals the denial by the district court[1] of a declaratory judgment seeking to preclude the Central Interstate Low-Level Radioactive Waste Commission (the Commission) from imposing deadlines on the State's regulatory process. The Commission, relying on the provisions of an Interstate Compact, established a deadline for the State to process a license application for a Low-Level Radioactive Waste facility. The State argues that the Commission has no authority to impose deadlines or interfere in any way with the State's regulatory authority. In the alternative, the State argues that the Commission's deadline was unreasonable. We affirm.

## I. BACKGROUND

The essential facts relating to this dispute have been recited several times. <u>See, e.g.</u>, <u>Nebraska v. Central Interstate Low-Level Radioactive Waste Comm'n</u>, 26 F.3d 77 (8th Cir. 1994); <u>Concerned Citizens of Neb. v. United States Nuclear Regulatory Comm'n</u>, 970 F.2d 421 (8th Cir. 1992). As a result, we provide only skeletal background facts along with those facts pertinent to this particular dispute.

In 1980, Congress enacted the Low-Level Radioactive Waste Policy Act (LLRW Act), Pub. L. No. 96-573, 94 Stat. 3347 (1980) (amended 1986), "to promote the development of regional low-level radioactive waste disposal facilities." <u>Concerned Citizens</u>, 970 F.2d at 422. Pursuant to the LLRW Act, Nebraska, Arkansas, Kansas, Louisiana, and Oklahoma formed the Central Interstate Low-Level Radioactive Waste Compact (the Compact). <u>See</u> Neb. Rev. Stat. § 71-3521 (reprinting the Compact hereinafter cited by article). The Compact was approved by Congress. <u>See</u> Omnibus Low-Level Radioactive Waste Interstate Compact Consent Act, Pub. L. No. 99-240, § 222, 99 Stat. 1859, 1863-71 (1986).

---

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska, presiding.

The Compact provides a framework for the development of low-level radioactive waste facilities and establishes a commission as the governing body charged with carrying out the Compact's purposes. The Commission selected Nebraska as the host state for a disposal facility, and contracted with US Ecology, Inc., to develop and operate the facility. Because Nebraska was selected as the host state, the Compact directed the State to "regulate and license" the facility to the extent authorized by federal and state law. See Article III(b). In accordance with the terms of the Compact, the State established its procedures and standards for review of license applications.

In 1990, US Ecology submitted its original application for licensing the proposed facility. Due to amendments to the application resulting from the State's technical review, as well as various other delays, the licensing process began to stretch out over several years, costing millions of dollars more than anticipated. Without any end in sight to the license review process, the Commission held a special meeting in August 1996, for the purpose of gathering information sufficient to set an appropriate schedule and deadline for the State to finish its work. Thereafter, the Commission passed a motion requiring the State to do three things by December 14, 1996, but no later than January 14, 1997: issue a Draft Environmental Impact Analysis, and a Draft Safety Evaluation Report (both necessary parts of the licensing process), and make its draft license decision.[2]

In November 1996, the State brought this suit seeking a declaratory judgment that the Commission's action in establishing the deadline was contrary to law, and without legal authority or binding effect. In the alternative, the State's complaint sought a declaration that the deadlines were unreasonable and therefore invalid. The district court concluded that the Commission has the authority under the Compact to impose

---

[2]A second motion was also passed, establishing a single, consolidated period for public hearing and comment. Challenge to this action was withdrawn and the issue is not before us on appeal.

a reasonable deadline for issuing a licensing decision, and found that the deadline was reasonable.  The State appeals both decisions.

In December 1998, while this appeal was pending, the State denied US Ecology's application—almost a year after the Commission's deadline.

## II.    DISCUSSION

A compact is a voluntary contract between states, and, if approved by Congress, it also becomes federal law.  See Texas v. New Mexico, 482 U.S. 124, 128 (1987).  This particular compact involves a reasonable and carefully limited delegation of power to an interstate agency–the Commission.  See West Virginia v. Sims, 341 U.S. 22, 31 (1951).  The State's overriding concern on appeal is the limiting of its authority to regulate.[3]  We are cognizant that the State's sovereign powers are potentially limited by the Compact, nevertheless, a compact is a "legal document that must be construed and applied in accordance with its terms."  Texas, 482 U.S. at 128.

As indicated, the State challenges the authority of the Commission to establish a reasonable deadline for the State's licensing process, and further questions whether the deadline was reasonable.  We first consider whether the Compact grants the Commission said authority, and thereby engage in plenary review of the district court's interpretation.  See Pievsky v. Ridge, 98 F.3d 730, 732 (3d Cir. 1996).

The epicenter of this dispute is Article V(e)(2) of the Compact.  This provision (the reasonable period provision) states that the Commission shall "*[r]equire* the

---

[3]The State cites New York v. United States, 505 U.S. 144 (1992), and Printz v. United States, 521 U.S. 898 (1997) for various propositions of sovereignty.  These cases are largely irrelevant here, except that they highlight the concerns associated with intrusion into sovereign powers.

appropriate state or states or the U.S. Nuclear Regulatory Commission to process all applications for permits and licenses required for the development and operation of any regional facility or facilities within a reasonable period from the time that a completed application is submitted." Article V(e)(2) (emphasis added). Furthermore, the Compact states that the Commission shall "[t]ake such action as may be necessary to perform its duties and functions as provided in this compact." Article IV(m)(9). Based upon a plain language interpretation of these two provisions, the Commission passed a motion imposing a duty on the State to process US Ecology's license application within a specific period. To enforce this duty on the State, the Compact requires the Commission to bring an appropriate action (e.g. a lawsuit). See Article IV(m)(8).[4] In the alternative, the Commission may revoke the State's membership in the Compact because of delay in licensing. See Article V(g).[5]

The State is not satisfied with the Commission's interpretation of the Compact, and suggests that the Compact as a whole is ambiguous or that the Commission relies only on implied power. In such a case, the State contends that this court should rely on the principle that sovereign power is not reduced except as expressly agreed. Although the State admits that the reasonable period provision of the Compact is not

_____

[4]Article IV(m)(8) states that the Commission shall, "[r]equire all party states and other persons to perform their duties and obligations arising under this compact by an appropriate action in any forum designated in section (e) of Article IV." Article IV(e) provides that the "commission may initiate any proceedings or appear as an intervenor or party in interest before any court of law, or any federal, state, or local agency, board, or commission that has jurisdiction over any matter arising under or relating to the terms and provisions of this compact."

[5]Article V(g) provides that, "[t]he commission may by a two-thirds affirmative vote of its membership, revoke the membership of any party state which, after notice and hearing, shall be found to have arbitrarily or capriciously denied or delayed the issuance of a license or permit to any person authorized by the commission to apply for such license or permit."

ambiguous, the foundation for the State's suggestion that the Compact as a whole is ambiguous is the assertion that the Compact's "terms leave *all* licensing and regulatory authority with the host state."  Appellant's Brief at 18 (emphasis added).  For this proposition, the State turns to Article III(b) which states "[t]o the extent authorized by federal law and host state law, a host state shall regulate and license any regional facility within its borders."  This is not a grant of *exclusive* authority.[6]  In fact, the reasonable period provision contemplates that a state or states will be exercising the authority to regulate and license a regional facility within its border, but nevertheless obligates the Commission to require a regulating state to process permit and license applications within a reasonable period.

There is likewise no support for the contention that the Commission is relying on implied powers arising from general language.  The reasonable period provision and the provision authorizing the Commission to take necessary actions to perform its obligations, Article IV(m)(9), are limited but clear expressions of delegated authority.  See West Virginia, 341 U.S. at 31.  The Commission's authority is a logical extension of the need for oversight to ensure that a state does not drag its feet indefinitely and thus frustrate the purpose of the Compact.  We do not agree that the Compact is ambiguous as to the Commission's authority to set a reasonable deadline for the processing of a license.

In another attempt to shake the Commission's authority, the State admits that the reasonable period provision "imposes an obligation on the commission," but argues that

---

[6]The State similarly relies on the grant of regulatory authority from the U.S. Nuclear Regulatory Commission (NRC) as a potential expression of exclusive authority to regulate.  The NRC granted Nebraska "authority to regulate the materials covered by the agreement [i.e. the Compact] for the protection of the public health and safety from radiation hazards."  42 U.S.C. § 2021(b).  This delegation is also not an exclusive grant of authority circumscribing the Commission's express authority under the reasonable period provision.

the method chosen by the Commission to fulfill that obligation was inappropriate. The State contends that "[t]he commission has other remedies for licensing delay." The potential other remedies are: (1) bring an appropriate action to require performance of the State's duties and obligations, under Article IV(m)(8), or (2) revoke the State's membership in the Compact, under Article V(g).

We agree with the district court's analysis pertaining to these suggested remedies. The district court found that Article IV(m)(8) requires the Commission to bring an appropriate action to enforce duties and obligations on the member states. The reasonable period provision is an obligation on the Commission, not the State. Thus, only when the Commission has fulfilled its obligation–to require the State to process the license application within a reasonable period–does the State's duty or obligation arise and become subject to an appropriate action under Article IV(m)(8). The remedy of revoking the State's membership under Article V(g) is useless in this setting, since revoking the State's membership would do nothing to require the State to process the license within a reasonable time. In any event, the Compact's language clearly makes revocation optional.

These other remedies are not softer alternatives designed to mitigate a harsh result, but function as enforcement mechanisms for the reasonable period provision. Without these remedies, use of the reasonable period provision would be merely hortatory. The State's interpretation of these remedies is inconsistent with a plain reading of the Compact, and furthermore renders the reasonable period provision superfluous. Cf. Windsor on the River Assoc. v. Balcor Real Estate Fin., Inc., 7 F.3d 127, 130 (8th Cir. 1993) (finding courts must avoid statutory interpretation that renders any section superfluous).

We also decline the State's invitation to venture into the frothy mix called legislative history. When the language of a Compact is straightforward and clear, the judicial inquiry ends with the language of the Compact. Cf. Northern States Power Co.

v. United States, 73 F.3d 764, 766 (8th Cir. 1996) (stating that analysis starts and ends with a straightforward and clear statute).  Although avoidance of all "disputes as to scope and meaning [of a compact] is not within human gift," West Virginia, 341 U.S. at 28, we find no ambiguity justifying departure from the plain language of the Compact.  The Compact clearly authorizes the Commission to set a reasonable deadline for the processing of a license application.  Despite the State's diligent efforts to bring the principles espoused in New York v. United States, 505 U.S. 144 (1992), and Printz v. United States, 521 U.S. 898 (1997), to bear on this case, the limited authority delegated by the Compact does not run afoul of the State's sovereign regulatory authority.[7]

The State alternatively argues that the specific deadline set by the Commission was unreasonable and therefore should not be binding on the State.  The district court found the deadline reasonable.  However, since that decision, the State took the action required by the Commission and denied the license application.  "Occasionally, due to the passage of time or a change in circumstances, the issues presented in a case will no longer be 'live' [preventing] a federal court from granting effective relief . . . ." Arkansas AFL-CIO v. Federal Communications Comm'n, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc).  When this occurs, and the court cannot grant specific and conclusive relief as to an issue raised, then the issue is moot.  See McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1210-11 (8th Cir. 1992).

The only remedy the State sought with respect to whether the deadline was justifiable, was a declaration that the deadline was unreasonable and therefore invalid.

_____

[7]In a satiated overstatement, the State posits: "Is the commission, then, a government entity with general police power to seize property, exercise judicial authority over individuals, compel action at the risk of punishment decreed by the commission, take over the functioning of recalcitrant state agencies, or do pretty much anything else that is reasonable, constitutional and necessary to carry out its duties?" Appellant's Reply Brief at 9-10.  We are unpersuaded by this rhetoric.

Because the deadline and licensing decision have passed, no resolution of this issue would give specific or conclusive relief.[8]  Both parties argued on appeal that the decision is not moot because of collateral consequences in a separate lawsuit.  However, this does not fall within any exception to the mootness doctrine that we can presently perceive.  Thus, a decision on the reasonableness of this specific deadline is moot.[9]

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

---

[8]Without addressing the issue directly, we believe, in any event, that the deadline established by the Commission was reasonable.

[9]Although we think this issue moot, our analysis differs for the earlier question of whether the Commission has the authority to set a reasonable deadline.  The doctrine, capable of repetition yet, evading review, is an exception to mootness and applies.  The exception applies when two simultaneous circumstances are present: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again."  Spencer v. Kemna, 118 S. Ct. 978, 988 (1998) (quoted sources omitted).  Schedules or deadlines can, by their nature, be of short duration.  Additionally, the close and ongoing relationship between the Commission and the State suggests a reasonable expectation that the State will be subject to the same action again.  Thus, the issue concerning the authority provision is not moot.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.