(Slip Opinion) OCTOBER TERM, 2020 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## TEXAS *v.* NEW MEXICO

### ON MOTION FOR REVIEW OF THE RIVER MASTER'S FINAL DETERMINATION

No. 65, Orig.   Argued October 5, 2020—Decided December 14, 2020

The 1949 interstate Pecos River Compact provides for equitable apportionment of the use of the Pecos River's water by New Mexico and Texas. In a 1988 amended decree in this case, the Court appointed a River Master to annually calculate New Mexico's obligations to Texas under the Compact. See *Texas* v. *New Mexico,* 485 U. S. 388. The Court also adopted the River Master's Manual, which elaborates on how to make the necessary calculations to determine whether New Mexico is complying with its obligations under the Compact. As relevant, §C.5 of the Manual provides that when water is stored "at the request of Texas" in a facility in New Mexico, then New Mexico's delivery obligation "will be reduced by the amount of reservoir losses attributable to its storage."

In 2014, a tropical storm caused heavy rainfall in the Pecos River Basin. To prevent flooding, Texas's Pecos River Commissioner requested that some of the River's water be stored in New Mexico. New Mexico's Commissioner agreed. Several months later, the water was released. But critically for purposes of this dispute, a significant amount of water evaporated while the water was held in New Mexico.

For years thereafter, the States sought to reach an agreement on how the evaporated water should be accounted for under the Compact. To permit those negotiations to continue, the River Master outlined a procedure in 2015 that called for the future resolution of the issue. Neither State objected. When negotiations eventually broke down, however, New Mexico filed a motion with the River Master that sought delivery credit for the evaporated water. As relevant here, the River Master ruled in New Mexico's favor, rejecting Texas's argument that the motion was untimely and concluding that the evaporated water was water stored "at the request of Texas" under §C.5 of the River

Syllabus

Master's Manual.

*Held*:

1. New Mexico's motion for credit for the evaporated water was not untimely. Both parties agreed to postpone the River Master's resolution of the evaporated-water issue. Neither party may now object to the negotiation procedure outlined by the River Master for resolving the dispute. Pp. 6–7.

2. New Mexico is entitled to delivery credit for the evaporated water. Section C.5 of the River Master's Manual resolves this case. Texas requested that New Mexico store water at a facility in New Mexico, and New Mexico did so, with the understanding that the water belonged to Texas. Texas's counterarguments—that the stored water was not actually part of the "Texas allocation" referred to in §C.5, that New Mexico did not "store" the water for §C.5 purposes, and that Texas should not be charged for any evaporation occurring from March 15 until the water was released in August 2015—are unpersuasive. Pp. 7–10.

Motion denied.

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, BREYER, SOTOMAYOR, KAGAN, and GORSUCH, JJ., joined. ALITO, J., filed an opinion concurring in the judgment in part and dissenting in part. BARRETT, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

## TEXAS *v.* NEW MEXICO

ON MOTION FOR REVIEW OF THE RIVER MASTER'S
FINAL DETERMINATION

No. 65, Orig.   Decided December 14, 2020

JUSTICE KAVANAUGH delivered the opinion of the Court.

This is a case about evaporated water. In the southwestern United States, the Pecos River begins near Santa Fe, New Mexico, and winds its way south for hundreds of miles through New Mexico and Texas before flowing into the Rio Grande River on the Texas-Mexico border. The 1949 interstate Pecos River Compact provides for equitable apportionment of the use of the River's water by New Mexico and Texas.

The dispute in this case started in 2014 when a tropical storm hit the Pecos River Basin. To prevent flooding, Texas asked New Mexico to temporarily store water from the Pecos River that would otherwise flow into Texas. New Mexico agreed to do so. A few months later, New Mexico released the water to Texas. But in the interim, some of the water evaporated.

The question presented is straightforward: Under the Pecos River Compact, does New Mexico receive delivery credit for the evaporated water even though that water was not delivered to Texas? The answer is yes. The River Master's Manual, which was approved by this Court in 1988, implements the Compact and speaks directly to this question: When water is stored in New Mexico "at the request of Texas," then New Mexico's delivery obligation "will be reduced by the amount of reservoir losses attributable to its

storage." App. to Texas's Motion for Review 37a. Here, the water was stored in New Mexico at the request of Texas, so New Mexico's delivery obligation must be reduced by the amount of water that evaporated during its storage.

For that reason, the River Master awarded New Mexico delivery credit for the evaporated water. We agree with the River Master's determination, and we deny Texas's motion for review.

## I
### A

The Pecos River originates in the Sangre de Cristo Mountains east of Santa Fe, New Mexico. The River flows south into Texas, winding its way for hundreds of miles past the oil fields, farms, ranches, and high school football stadiums of west Texas. About 900 miles later, the Pecos pours into the Rio Grande River a few miles west of the city of Del Rio on the Texas-Mexico border.

Because of the dry landscape, farmers and ranchers in New Mexico and west Texas have long depended on Pecos River water. Over time, Texas recognized that its water supply was vulnerable because upriver New Mexico could (if it wanted) restrict Texas's access to the water from the Pecos River. Eventually, the two States struck a deal. In 1949, the States ratified and Congress approved the Pecos River Compact to, among other things, "provide for the equitable division and apportionment of the use of the waters of the Pecos River" and "remove causes of present and future controversies." Art. I, 63 Stat. 160.

Because of the irregular flow of the Pecos River, the Compact does not enumerate a specific amount of water that New Mexico must deliver to Texas each year. Rather, Article III(a) of the Compact provides that "New Mexico shall not deplete by man's activities the flow of the Pecos River at the New Mexico-Texas state line below an amount which will give to Texas a quantity of water equivalent to that

available to Texas under the 1947 condition." *Id.*, at 161.

Article VI(c) of the Compact in turn prescribes a methodology to implement Article III(a) and determine whether New Mexico has met its annual delivery obligation: "the inflow-outflow method." *Id.*, at 163. Roughly speaking, the inflow-outflow method looks at how much water is in the River in New Mexico, which in turn helps determine how much water New Mexico must allow to flow into Texas.

In 1987, after a number of early disputes, this Court determined that New Mexico was not allowing sufficient water to flow into Texas and was therefore breaching its Article III(a) obligations. *Texas* v. *New Mexico*, 482 U. S. 124, 127–128. The Court issued a decree setting forth the States' rights and duties. *Id.*, at 135. In addition, in light of the States' "natural propensity" to disagree, the Court decided to appoint a disinterested River Master "to make the calculations provided for in this decree, annually and as promptly as possible as data are available." *Id.*, at 134.

In 1988, the Court appointed Neil S. Grigg as River Master, and he continues to serve in that position. *Texas* v. *New Mexico*, 485 U. S. 388, 394 (*per curiam*). The Court also issued an amended decree. The amended decree requires the River Master to annually calculate: (i) New Mexico's delivery obligation; (ii) any shortfall or overage based on what New Mexico actually delivered; and (iii) the net shortfall, if any, after subtracting any overages accumulated in previous years. *Id.*, at 391.

In making those calculations, the River Master must abide by the River Master's Manual, which the Court described as "an integral part of this Decree." *Id.*, at 389; see also *id.*, at 391. New Mexico ordinarily receives credit only for water that actually makes its way to Texas. But there are exceptions. Sometimes, as in this case, water may be stored in New Mexico at Texas's request. Section C.5 of the River Master's Manual addresses that situation. It is titled "Texas Water Stored in New Mexico Reservoirs." App. to

Texas's Motion for Review 37a.  As relevant here, §C.5 pro-
vides:

> "If a quantity of the Texas allocation is *stored* in facili-
> ties constructed in New Mexico *at the request of Texas,*
> *then . . . this quantity will be reduced by the amount of*
> *reservoir losses attributable to its storage*, and, when re-
> leased for delivery to Texas, the quantity released less
> channel losses is to be delivered by New Mexico at the
> New Mexico-Texas state line." *Ibid.* (emphasis added).

Procedurally, the decree (i) directs the River Master to
deliver an annual preliminary report to the States by May
15; (ii) requires the States to submit any objections prior to
June 15; (iii) specifies that the River Master deliver a final
report by July 1; and (iv) mandates that a State file any
request for review of the final report in this Court within 30
days of the final report.  *Texas*, 485 U. S., at 391, 393.  Each
State appoints a single Pecos River Commissioner to repre-
sent the State's interests.

B

In the fall of 2014, Tropical Storm Odile caused heavy
rainfall in the Pecos River Basin.  The rain quickly filled a
Texas reservoir known as Red Bluff Reservoir.  Red Bluff
lies just south of the New Mexico-Texas border along the
Pecos River, about 50 miles west of Kermit, Texas.

In November 2014, to prevent flooding, Texas's Pecos
River Commissioner wrote to his counterpart Commis-
sioner in New Mexico: "[I]t is my request that New Mexico
store Texas' portion of the flows until such time as they can
be utilized in Red Bluff Reservoir."  App. to Texas's Motion
for Review 61a.  In response, New Mexico's Commissioner
agreed that water would be stored at the Brantley Reser-
voir in New Mexico, a reservoir owned by the United States.
But he also explained that the water "belongs to Texas" and

that "[b]ut for Texas' request, New Mexico would have released" the water "to the Texas state line." *Id.*, at 63a. The New Mexico Commissioner added that "[e]vaporative losses . . . should thus be borne by Texas." *Ibid.*

Beginning in August 2015, the water was finally released to Texas. But there was a problem: During the time that the water was stored in New Mexico, a significant amount of water (approximately 21,000 acre-feet) evaporated.

During the early months of 2015, Texas and New Mexico discussed how to account for that evaporated water under the Compact. But they did not reach an agreement. In May 2015, the River Master issued his preliminary report for 2014. The preliminary report did not account for the evaporated water, but instead explained that the States would be "evaluating the issue and sending a recommendation about how to proceed." App. to State of New Mexico's Response 38.

The States still had not agreed on a course of action as of the July 1, 2015, deadline for the River Master's final report. Because the States had not submitted a joint proposal, the final report reiterated that the dispute over the water would be resolved later. In a section titled "Pending Issues," the report explained that the "States can reach agreement" or, if not, either "State can initiate a motion to be considered by the River Master." *Id.*, at 61.

Importantly, neither State objected to the preliminary or final reports for 2014. In other words, neither State opposed the ongoing procedure outlined by the River Master for resolving this dispute. In the months and years that followed, the States continued to toil away on a joint proposal for the River Master. But the negotiations between the States eventually broke down, and in 2018, New Mexico filed a motion with the River Master seeking delivery credit for the evaporated water.

In September 2018, as relevant here, the River Master

ruled in favor of New Mexico. First, he rejected Texas's argument that New Mexico had waited too long to file its motion for credit for the evaporated water. He stated that "discussions about the flood and accounting for it equitably were continuous from the time the flood occurred until the present"; that the States "knew from the time of the flood that such an adjustment would be required"; and that the States had not previously expressed any urgency about resolving the matter. App. to Texas's Motion for Review 269a–270a.

Second, on the merits, the River Master concluded that the evaporated water was "Texas Water Stored in New Mexico Reservoirs" under §C.5 of the River Master's Manual. Applying that provision of the Manual, the River Master decided that New Mexico was entitled to delivery credit for the evaporated water.[1]

In the wake of the River Master's decision, Texas invoked this Court's original jurisdiction and filed a motion for review of the River Master's determination.

## II

Texas first argues that New Mexico's 2018 motion to the

--------

[1] We note four aspects of the River Master's decision that are not at issue here. First, the River Master determined that these stored waters were not "unappropriated flood waters" for purposes of the Compact. Art. III(f), 63 Stat. 161. Neither State challenges that determination. Second, the River Master ruled that the States should be equally charged for evaporation that occurred before March 1, 2015, because public safety concerns in both States counseled against releasing the water before that date. That aspect of the River Master's decision is likewise not at issue in this Court. Third, in ruling for New Mexico, the River Master did not rely on Article XII of the Compact, which applies to "consumptive use of water by the United States." *Id.,* at 165. Although Texas asks us to overturn the River Master's determination, Texas agrees that Article XII does not apply here. We therefore need not address that provision. Fourth, the River Master amended the Manual. That amendment does not affect our resolution of this case, so we need not address it.

River Master for credit for the evaporated water was untimely. According to Texas, New Mexico filed the motion after expiration of the amended decree's 30-day deadline for a State to file objections to the relevant preliminary report—a deadline that in this case would have expired several years ago. See *Texas*, 485 U. S., at 391.

Texas's argument disregards the history of the proceedings in this case. Both States agreed to postpone the River Master's resolution of the evaporated-water issue while they negotiated and sought an agreement. The River Master's annual reports in turn repeatedly explained that the States were trying to negotiate a solution to the issue. Neither State objected to the negotiation procedure. Texas cannot now run away from the procedure that it agreed to.

Texas responds that the amended decree's deadlines for objections are jurisdictional, meaning that the River Master and the States could not postpone the deadlines for objecting to the reports. But those time limits are plainly not jurisdictional. Among other things, the time limits do not "'speak in jurisdictional terms or refer in any way to the jurisdiction'" of this Court. *Henderson* v. *Shinseki*, 562 U. S. 428, 438 (2011) (quoting *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 394 (1982)).

We proceed to the merits.

### III

On the merits, Texas contends that it should receive credit for the water that evaporated while New Mexico was storing the water. New Mexico and the United States argue that Texas is not entitled to credit because the water was stored in New Mexico at Texas's request. We agree with New Mexico and the United States.

Recall that Article VI(c) of the Compact provides that "the inflow-outflow method . . . shall be used" to calculate New Mexico's Article III(a) delivery obligation. 63 Stat. 163. To implement the Compact, as we have explained, this Court's

1988 amended decree adopted the River Master's Manual, which elaborates on how to make the proper calculations. See *Texas*, 485 U. S., at 389 (describing the Manual as "an integral part of this Decree"). In particular, since 1988, the Manual has included §C.5, which states:

> "If a quantity of the Texas allocation is *stored* in facilities constructed in New Mexico *at the request of Texas, then . . . this quantity will be reduced by the amount of reservoir losses attributable to its storage*, and, when released for delivery to Texas, the quantity released less channel losses is to be delivered by New Mexico at the New Mexico-Texas state line." App. to Texas's Motion for Review 37a (emphasis added).

We agree with the River Master that the text of §C.5 of the Manual easily resolves this case. Texas's Pecos River Commissioner asked that the water be stored at a facility in New Mexico when, in November 2014, he sent New Mexico's Commissioner an e-mail with the plain-spoken subject line "Texas request for storage." *Id.*, at 61a. In that e-mail, Texas requested that New Mexico hold Texas's "portion of the flows until such time as they can be utilized in Red Bluff Reservoir." *Ibid.* New Mexico did so. But New Mexico was careful to remind Texas that the water "belongs to Texas," and that, "[b]ut for Texas' request, New Mexico would have released" the water "to the Texas state line." *Id.*, at 63a. New Mexico also added (correctly, as it turns out) that "[e]vaporative losses . . . should thus be borne by Texas." *Ibid.*

The text of §C.5 and the record evidence of the States' correspondence establish that New Mexico is entitled to delivery credit for the water that evaporated while New Mexico was storing the water at Texas's request.

In response, Texas offers various arguments, but none is persuasive.

*First*, Texas suggests that the stored water was not actually part of the "Texas allocation" referred to in §C.5 of the Manual. But under that provision, Texas's "allocation" is the amount of water that Texas would have received if the water had not been stored in New Mexico. See Compact, Art. III(a), 63 Stat. 161 (entitling Texas to the "quantity of water equivalent to that available to Texas under the 1947 condition"); Art. VI(c), *id.,* at 163 (requiring the use of the "inflow-outflow method"). Here, Texas requested that New Mexico store water that otherwise would have flowed across the state line and counted toward Texas's allocation. The stored water was therefore part of Texas's allocation under §C.5.

*Second*, Texas asserts that New Mexico did not "store" the water for purposes of §C.5. Texas suggests that the term "stored" in that provision means holding the water long-term for beneficial use. But §C.5 of the Manual does not purport to define "stored" in any way other than its ordinary meaning of holding water for Texas. Consistent with that ordinary meaning, the States regularly used variations of the term "store" to describe the storage of the water in this case. Indeed, Texas's initial request to New Mexico came in an e-mail with the hard-to-misunderstand subject line "Texas request for storage." App. to Texas's Motion for Review 61a. For purposes of §C.5, New Mexico stored the water.

*Third*, Texas contends that it did not request that the water be stored in New Mexico after March 2015. Therefore, according to Texas, any evaporation that occurred from March 2015 until the water was released to Texas in August 2015 should be charged to New Mexico. But Texas initially requested storage in November 2014. Even as late as July 2015, shortly before the water was released, Texas still had not requested the release of the water. Because Texas did not rescind its request for storage or otherwise ask for release before August 2015, the River Master did

not err in awarding New Mexico delivery credit for evaporation that occurred after March 2015.

*        *        *

The water was stored in New Mexico *at the request of Texas*. Some of the water then evaporated before it was released to Texas. Under those circumstances, as the River Master correctly concluded, New Mexico is entitled to delivery credit for the evaporated water. That result is both legally accurate and entirely fair. We deny Texas's motion for review.[2]

*It is so ordered.*

JUSTICE BARRETT took no part in the consideration or decision of this case.

─────────
[2] The Court has previously stated that the River Master's determinations are reviewed only for clear error. *Texas* v. *New Mexico*, 485 U. S. 388, 393 (1988) (*per curiam*) (a final determination "shall be subject to review by this Court only on a showing that the Final Determination is clearly erroneous"). Here, New Mexico prevails even under *de novo* review, so the standard of review does not affect our judgment in this case.

# SUPREME COURT OF THE UNITED STATES

TEXAS *v.* NEW MEXICO

ON MOTION FOR REVIEW OF THE RIVER MASTER'S
FINAL DETERMINATION

No. 65, Orig.   Decided December 14, 2020

JUSTICE ALITO, concurring in the judgment in part and
dissenting in part.

I agree with the Court's rejection of Texas's argument
that New Mexico forfeited any objection to the River Mas-
ter's 2014 report because it did not file an objection by the
deadline imposed by the amended decree.  On this issue,
there were violations all around.  The River Master violated
the deadlines imposed by the amended decree for filing his
reports.  See *Texas* v. *New Mexico*, 485 U. S. 388, 391 (1988)
(*per curiam*); App. to State of New Mexico's Response 61.
New Mexico did not file its objections in time, see *Texas* v.
*New Mexico*, 485 U. S., at 391; App. to State of New Mex-
ico's Response 38, 59–61, and Texas essentially acquiesced
for months, if not years, see Texas's Motion for Review 9;
App. to Texas's Motion for Review 269a.  Under the circum-
stances, Texas forfeited its objection.  Going forward, the
States and the River Master should take better care to
abide by the terms of the amended decree.

On the question whether the River Master properly allo-
cated the water that evaporated, I would vacate and re-
mand, with instructions to the River Master to redo his
analysis in accordance with the relevant terms of the
amended decree and the manual.  In sanctioning the River
Master's handling of this issue, the Court ignores critical
facts.  The decision to store the water, as well as the deci-
sion eventually to release it, was made by the federal Bu-
reau of Reclamation.  *Id.*, at 68a–69a, 236a; App. to State of
New Mexico's Response 93.  The Federal Government as-
serts that the water was held for flood control purposes,

Brief for United States as *Amicus Curiae* 7–8; App. to Texas's Motion for Review 68a. And, because Texas was not a party to a contract for storage, it appears that it would have been unlawful for the federal authorities to store the water simply because Texas requested that they do so. *Id.*, at 68a; see also Warren Act, 43 U. S. C. §523.

In light of these facts, the relevance of Texas's request for storage and New Mexico's agreement with that request is unclear. Perhaps the States' exchange of e-mails should be seen as simply an agreement that the Bureau should hold the water to prevent flooding. Perhaps the River Master thought that the Bureau acted ultra vires and stored the water for all or part of the time in question simply because Texas so requested. In any event, it is necessary to fit together in a coherent picture the actions taken by the federal and state authorities. I would instruct the River Master to tackle that task in the first instance on remand.

Unless the River Master determines that the water was not held for flood control purposes for the entirety of the time in question, it should analyze how evaporative losses of water kept for those purposes should be treated. There are several possibilities.

One is that the water constituted "unappropriated flood waters." Pecos River Compact, Art. II(i), 63 Stat. 161; see also Art. III(f ), *ibid.*; Art. VI(d), *id.*, at 164. The River Master has already held that the water did not fall into this category, and neither State disputes that finding. See Texas's Motion for Review 13; New Mexico's Response 13–14. Unless the River Master or the States have second thoughts on remand, that possibility can be ruled out.

Another possibility is that evaporation of the water in question represented "consumptive use" by the United States. Art. XII, 63 Stat. 165. If that is so, the Compact specifies how such consumptive use is to be handled. *Ibid.* And a third possibility is that the water does not fall into either of the above categories.

Finally, I would hold that the River Master's amendment to the manual, insofar as it changed the deadlines imposed by the amended decree, is invalid. The River Master does not have the authority to alter the amended decree. See *Texas* v. *New Mexico*, 485 U. S., at 391. The Court declines to reach this question because it concludes that it has no effect on the principal issues before us, but I would clarify the status of this amendment so that the River Master will conform to the terms of the amended decree going forward. By declining to reach this question, the Court may be inviting future problems.